**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BERNITHA RICE** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:17-CV-00932-DPJ-FKB**

**HINDS COUNTY, MISSISSIPPI a/k/a**
**HINDS COUNTY BOARD OF SUPERVISORS and**
**HINDS COUNTY TAX COLLECTOR, EDDIE J. FAIR**
**INDIVIDUALLY** **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF INDIVIDUAL MOTION FOR SUMMARY JUDGMENT**

**COMES NOW,** Defendant, Hinds County Tax Collector, Eddie J. Fair, Individually, by counsel, and respectfully files his Memorandum of Authorities in Support of his Individual Capacity Motion for Summary Judgment in response to the Individual Capacity Allegations in the "sexual harassment, retaliation and sexually hostile work environment" Complaint (with no alternate theories plead) filed herein by Plaintiff Rice, as follows:

**1) THE UNDISPUTED FACTS DEMONSTRATE MIS-BEHAVIOR BY A PROBATIONARY EMPLOYEE RESULTING IN A TERMINATION CONCURRED WITH BY HER IMMEDIATE FEMALE SUPERVISOR FOR:**

- Acting insubordinate to her supervisors
- Taking out lipstick at work station
- No professional skills
- Sing out loud at work station
- Tried to discuss personal things about female hygiene
- She never understood how to do her job

- Supervisor would tell her how to do her work then she would ask Joseph the same questions
- Eat at counter - rule against that - eat strawberries and fruit at counter
- Smart mouthed to supervisors
- Talks to customers very bad
- Said inappropriate things to co-workers
- She was negative about supervisors
- Called supervisor "stupid" and "bitch"

Exhibits A, B, C, D: Affidavits of Kristi Fields, Joseph Francis, Eddie Fair, Patricia Collins.

Rice admits knowing performance issues with her immediate supervisor could get her sent home.

Deposition of Bernitha Rice (Exhibit E):

31 18 Why didn't you ever go to your supervisor, Christy, and tell her about the sexual harassment? **Here is why: Because probably two days of coming out of the mailroom with Christy standing to my right, I was doing the transaction. But when you come out that close, they are going to really watch you do hands-on. A patron came up** P32/L1 **to the window and said to Christy, "Oh, she must be new. You are training her." Christy looked at him and say, "Yeah. And if she don't get it, she going to be right on out the door." Being out of the mailroom only 48 hours, I did mostly work, what is the word, unsupervised. But there is training you**

**can only get out front. When I got ready to go to break that day, I went to Mr. Fair's secretary, her name was Kenisha. I said, "Could I speak to Mr. Fair?" His door was mostly always open, but you couldn't just go in, because her office was the front part and she said "Yeah." I went in and sat down and told him what Christy said to me. For her making that statement, I told him it just made me feel a little like I just got here and if that is true, if I didn't catch on I would be out the door, but to say that to a public servant, a person that's up here for services, I didn't think that to be professional. I said that to Mr. Fair and he never told** P33/L1 **me whether he ever spoke with her or anything else after that. So from that point on I just did the best I could.**

Rice denies being insubordinate, claims Christy only called her out for singing once, claims the sole complaint about her being loud was a customer and that she was otherwise only sent home for the day a single time for being late.

41 5 **I remember the conversation where Christy walked up to me and she said "Bernitha, are you singing?" I was like "No, I'm not singing." She walked away. No, no one ever told me that I was too loud or too rude.**

**41 24 She said "Oh my ear."** P42/L1 **I said, "Oh I apologize" She was standing to my left and I was to her right. There was a difference in the volume because we have Plexiglass or whatever we have to make our transactions under. My voice level was the same as it was then I was on the opposite side that I walked around. That is the only time I ever**

**heard of that.**

42 22 You are saying that your supervisors never brought you in and talked about your work performance? **Never. No, ma'am.**

43 1 Was there ever a time that your supervisor said "You need to quit singing" and that you would start humming? **No. The only time ever someone said anything was Christy when she walked up and asked if I was singing and I told her that I wasn't. I have never been called in once. They had, it was called the team, Christy labeled it a team meeting. One evening, I don't know what date it was, everybody on my side, they determined who was going to be your supervisor. It was like 3 of us, but all of us were newbies, I call it. She called us in and said "Look, y'all, it's a competition." She said "Everybody wants to do the best they can and be on the team."**

45 4 Was there a policy in place about what time you had to arrive to work? **Yes, it was in the handbook.** Were you ever late to work? **I was late one day and I was sent home the same day I was late. I was late the day after the 4th of July. I was late the Tuesday - - I got fired Thursday. I was late on Tuesday by 2 minutes and I never been late before. I know they didn't want to hear it but the courts had been closed. They observed the 4th of July.**

Exhibit E, Deposition of Bernitha Rice.

**2) COUNT I - VIOLATION OF TITLE VII - SEXUAL HARASSMENT AND THE**

## 14TH AMENDMENT THROUGH §1983 - EQUAL PROTECTION - FAILS AS A MATTER OF LAW.

### A. STANDARD

Proving a **hostile working environment** requires four elements: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a 'term, condition, or privilege' of employment, and (5) her employer knew or should have known of the harassment and failed to take remedial action." *Arensdorf v. Geithner,* 329 F. App'x 514, 517 (5th Cir. 2009).

Importantly, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation omitted). The work environment must be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, *710 and one that the victim in fact did perceive to be so." *Aryain v. Wal–Mart Stores Tex., LP,* 534 F.3d 473, 479 (5th Cir.2008) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (internal brackets omitted). In determining whether a work environment is "hostile" or "abusive" within the meaning of Title VII, courts must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).[1]

---

[1]Although it appears as the more applicable theory under See *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000) a Title VII quid pro quo claim was <u>not</u> plead here. See **[Doc. # 1]**, Complaint "Plaintiff has been subjected to sexual harassment, retaliation and a sexually hostile work environment in the terms and conditions of her employment with Defendant."

Importantly, the Fifth Circuit has determined that where an employer has a detailed sexual harassment policy, the [employee] unreasonably delays reporting the conduct and the [employee] fails to put forth evidence that management knew of the conduct and failed to act, the initial burden is not met. *Pullen v. Caddo Parish School Board,* No. 15-30871 (Fifth Cir. 2016). The applicable Hinds County Policy with a signed acknowledgment from Plaintiff Rice is on file with the EEOC Position Statement of Hinds County, Exhibit F.

In *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000), the Fifth Circuit set forth the general frame work for analyzing all supervisor sexual harassment cases. First, the complaining employee must demonstrate that he suffered a tangible employment action. *Id.* If so, the suit is classified as a quid pro quo case. *Id*. If not, the suit is classified as a hostile work environment case. Here, Plaintiff Moore pleads both classifications in the alternative. *Id.*

Tangible employment actions require an official act of the enterprise, i.e., a company act, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761–62, 118 S. Ct. 2257). Thus, in a *quid pro quo action,* "the court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment." *Casiano,* at p. 283. If the employee can't show such a nexus, then the employer may be held vicariously liable and is not entitled to assert affirmative defense that it exercised reasonable care and employee failed to take advantage of corrective measures provided by employer. *Id.*

**B. ANALYSIS**

**FACT:** Even if true, the conduct alleged was neither objectively severe, hostile or pervasive.

In *Stewart v. Miss. Transp. Comm'n,* 586 F.3d 321, 325 (5th Cir. 2009) it was alleged that

a supervisor said that he and the employee should be "sweet" to each other and stated that he loved her approximately six times. The Fifth Circuit held that these occasional statements, which occurred over the course of about one month, did not create a hostile work environment because they were not severe, physically threatening, or humiliating; at most, they were unwanted and offensive. This was not the kind of conduct that would interfere unreasonably with a reasonable person's work performance or destroy her opportunity to succeed in the workplace. Objectively, a reasonable person would not find the supervisor's actions in 2006 to be offensive enough to constitute a hostile work environment.

Plaintiff Rice's personal history includes occupational disability arising from service-connected PTSD/MST (military sexual trauma), personal loss, civil litigation of a personal nature and domestic disturbances resulting in extensive and ongoing mental health treatment and difficulty maintaining employment. See Rice Deposition, Exhibit E. Rice came to the Hinds County Tax Collector's Office through a VA program attempting to return her to active employment. Without an extensive discussion of Plaintiff Rice's VA history, there is an obvious analogy to the plaintiff in the *Stewart* case here. The *Stewart* Plaintiff experienced some things in her past which may very well have made the remarks of her supervisor subjectively offensive. That's not the standard.

Similarly, sexual teasing and some touching over a period of two years was "not severe" because it was "not the type of extreme conduct that would prevent [the plaintiff] from succeeding in the workplace." *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999). Yet, the allegations against Mr. Fair are far less this. Respectfully, Plaintiff Rice

does not state a cognizable hostile environment claim.[2]

In the alternative, Plaintiff Rice would not qualified for an alternate *quid pro quo* sexual harassment claim because this requires that she that 1) she belongs to a protected group; 2) that the she was subject to unwelcome sexual harassment; 3) the harassment complained of was based on sex; 4) the employee's reaction to the harassment complained of affected a tangible employment action and 5) the harasser was the employee's supervisor. *See Boone v. Mississippi Valley State Univ.*, No. CIV.A. 4:04CV158-P-B, 2005 WL 1421125, at *3 (N.D. Miss. June 9, 2005) (citing *Ellerth*, 524 U.S. at 742, 118 S. Ct. at 2257 *Faragher*, 524 U.S. at 775, 118 S. Ct. at 2275).

In *Giddens v. Community Edu. Centers, Inc.*, 540 Fed Appx. 381, 388 (5th Cir. 2013), the Fifth Circuit affirmed summary judgment on the plaintiff's quid pro quo supervisor sexual harassment claim holding that she had not demonstrated that the supervisor's acts proximately caused her termination. The Court explained that while the plaintiff had presented sufficient evidence to create a genuine issue of material fact as to whether the supervisor performed acts motivated by discriminatory animus and intended to cause an adverse employment action, there was no evidence that the supervisor's acts had proximately caused her termination because the decision maker's ultimate decision was based on independent evidence gathered from an independent investigation. *Id.* Here, there is similar evidence that Rice knew of her immediate supervisors concerns and actually committed the misconduct. Moreover, her immediate supervisor knew nothing of the claimed harassment and concurred in the termination.

---

[2]It is anticipated that the official claims defendant will offer analysis addressing applicability of the fifth element. The fact Hinds County responded to the EEOC and not Mr. Fair individually is consistent with this Court’s summary judgment finding in *Williams v. Mistras Grp., Inc.,* No. 3:11cv128-DPJ-FKB, 2012 U.S. Dist. LEXIS 27608, at *9 (S.D. Miss. Mar. 2, 2012).

**3) COUNT II - VIOLATION OF TITLE VII - SEXUAL HARASSMENT AND THE 14TH AMENDMENT THROUGH §1983 - RETALIATION - FAILS AS A MATTER OF LAW.**

**A. STANDARD**

**PROTECTED ACTIVITY** - To establish a prima facie case of retaliation, Rice must demonstrate that: "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir. 2008). Plaintiff Rice, while alleging harassment during her three-month tenure, does not allege that she took any steps to address the situation. Rather, Rice acknowledged to the EEOC that she was sent home by a female supervisor for coming into work late.

**CAUSATION** - Plaintiff's Retaliation theory is barred under *Gross v. FBL Financial Services, Inc.*, 129 S. Ct. 2343 (2008) and progeny. Moreover, temporal proximity is insufficient here. *Strong v. Univ. Health Care Sys., L.L.C.,* 482 F.3d 802, 808 (5TH Cir. 2007)(finding that "temporal proximity alone is insufficient to prove but for causation . . . [because] [s]uch a rule would unnecessarily tie the hands of employers."). Mixed motive is not applicable. *University of Tex. SW. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013)(Claims of retaliation under Title VII "must be proved according to traditional principles of but-for causation.").

Plaintiff Rice must prove, though, a heightened, 'but for' causation standard that she would not have been discharged from her probationary employment had she not exercised her rights. *Wheat v. Florida Parish Juvenile Justice Commission,* No. 14-30788 (Fifth Cir. 2016); and, *Univ. of Texas SW Med. Cntr. v. Nassar,* 133 S. Ct. 2577, 2533 (2013). Yet, her supervisor and co-workers found her frequently rude and unable to balance monetary balances daily. This left the employer at risk for

improperly accounting for public funds. Thus, as a probationary employee, the decision to terminate was not "but for" her complaints; rather, that it was based on observation of improper workplace conduct. The D.C. Circuit has held that probationary employees may be terminated even if a permanent employee under the same circumstances could not be terminated. *George v. Leavitt,* 407 F.3d 405, 415 (D.C. Cir. 2005) (adopted by reference in the Fifth Circuit case of *Thomas v. Johnson,* No. 14-41085 (2015)).

**B. ANALYSIS**

> **FACT:** Rice made neither a complaint under the applicable employment policy or a notice of charge with the EEOC as to Defendant Fair, Individually. Her EEOC charge was directed only to Hinds County. Her probationary employment had already been terminated with the concurrence of an intermediate female supervisor when her EEOC charge to Hinds County was made.

Plaintiff Rice will attempt to emphasize her access to Mr. Fair via phone records where she called him and sent him text messages (and he responded) on many occasions. Although notably this attempt to smear Mr. Fair is neither substantiated via actual recordings or preserved text messages, the real disconnect here is the clear absence of any direct prior disciplinary action by Mr. Fair. Nor is there either allegation or inference of any expression of animosity by Mr. Fair.[3] Instead, we see direct involvement of intermediate supervisory authority and nothing that would create an

---

[3] *Williams v. Mistras Grp., Inc.,* No. 3:11cv128-DPJ-FKB, 2012 U.S. Dist. LEXIS 37223, at *15 (S.D. Miss. Mar. 20, 2012)("And in this case, there is neither proof of a similarly-situated comparator who was treated better nor substantial evidence rebutting each non-retaliatory reason offered for the termination of her employment.").

inference that the supervisors knew of or were motivated by Rice's post termination allegations of sexual harassment.

Such a disconnect was significant in *Dickinson Leisure Industries, Inc. v. City of Dickinson*, where a landowner (Hill) alleged adverse zoning decisions were made against him because he publicly spoke out against the Mayor and Board's policies. 329 F. Supp. 2d 835 (S.D. Tex. 2004). In *Dickinson*, Hill alleged the current Mayor and a current councilman stated his "zoning problems were a result of his public stance." *Id*. at 842. On motion for summary judgment, the City moved to exclude the statements by the Mayor and councilman as hearsay. In *Dickinson*, the court found the statements did not suggest that any individual had personal knowledge that the City's zoning decisions were motivated by Hill's public stance against the City administration. *Id*. at 848. The *Dickinson* court found the statements amounted to speculation only and were properly excluded. *Id*.

In a Title VII action brought by four female former employees against clinics and clinics' owner for sex discrimination and retaliation, hearsay testimony was admissible to demonstrate (1) that other individuals had filed harassment claims through proper channels but that no action was taken, or (2) that an employee's decision to investigate a harassment claim caused clinics' owner to retaliate. Civil *Alaniz v. Zamora-Quezada,* 591 F.3d 761 (5th Cir. 2009). Here, there is no evidence that any of these statements offered were within the proper channels *(Rice was heard threatening to retaliate as she cleared her personal belongings and later filed an EEOC charge against Hinds County*).

**4) PLAINTIFF FAILED TO EXHAUST AN INDIVIDUAL CAPACITY CLAIM**

**A. STANDARD**

**EXHAUSTION:** The premise statement is something of a misnomer, as there is no

individual capacity claim under Title VII. Yet, an individual wishing to bring a Title VII lawsuit must first file an EEOC charge within, as relevant here, 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). The Fifth Circuit has noted that the law interprets what is properly embraced in review of Title VII employment discrimination claim somewhat broadly, not solely by scope of administrative charge itself, but by scope of Equal Employment Opportunity Commission (EEOC) investigation which could reasonably be expected to grow out of a discrimination charge. Civil Rights Act of 1964, §§ 7096(b), 717(c), 42 U.S.C.A. §§ 2000e–5(b), 2000e–16(c). *Pacheco v. Mineta,* 448 F.3d 783 (5th Cir. 2006). Rather, courts suggest a fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and directive to look to the substance.

One of the primary purposes of an EEOC charge is to put an employer on notice of the existence and nature of the charges against it. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 879-80 (5th Cir.2003). A Title VII suit is limited to "the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993). A court action cannot encompass facts or issues not relating to the subject matter of the EEOC charge. *Id.* In fact, "... allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges." *Clayton v. Rumsfeld,* 106 Fed. Appx. 268, 271 (5th Cir.2004).

**B. ANALYSIS**

**FACT:** Rice made neither a complaint under the applicable employment policy nor a notice of charge with the EEOC as to Defendant Fair Individually. Her EEOC

charge was directed only to Hinds County. Mr. Fair is not a proper individual defendant in any event.

A paradox faces Plaintiff Rice. She failed to utilized the applicable Hinds County Personnel Policy. She directed her EEOC charge to Hinds County. Attempting to either cover Mr. Fair as an agent of the County, Rice names Mr. Fair individually. Yet, Rice does not allege Mr. Fair to be her Title VII Employer. Clearly, an agent of the County is not a proper Title VII Defendant.[4]

In other words, joinder of both the employer and its agent is redundant. *Carpenter v. Miss. Valley State Univ.,* 807 F. Supp. 2d 570, 588 (N.D. Miss. 2011). This paradox, respectfully, precludes Rice's retaliation claim as her probationary employment had already been terminated upon recommendation of an intermediate supervisor when her EEOC charge to Hinds County was made.

**5) INDIVIDUAL DEFENDANT FAIR IS ENTITLED TO QUALIFIED IMMUNITY.**

**A. STANDARD**

**QUALIFIED IMMUNITY:** The most logical interpretation of the pleadings here is that Plaintiff Rice brings her sexual harassment claim under Section 1983 against Mr. Fair. A government employee may assert the affirmative defense of qualified immunity to a suit for a civil

---

[4]*Chehl v. Southern Univ. and Agric. And Mech. Coll.,* 34 F. App'x 963 (5th Cir. 2002) ("Title VII does not impose personal liability on individuals."); *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir. 1994) (holding that "[o]nly 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be held liable under Title VII"); *Clanton v. Orleans Parish Sch. Bd.,* 649 F.2d 1084 (5th Cir. 1981) (holding that a supervisor who implemented a maternity leave policy that violated the terms of Title VII could not be held individually liable); *Chavez v. McDonald's Corp.,* 1999 U.S. Dist. LEXIS 15978, 1999 WL 814527, at *2 (N.D. Tex. Oct. 8, 1999) (dismissing Title VII claim brought against supervisor in his individual capacity)."[R]elief under Title VII is available only against an employer, not an individual supervisor or fellow employee." *Foley v. Univ. of Houston Sys.,* 355 F.3d 333, 340 (5th Cir. 2003); *Ackel v. Nat'l Commc'ns, Inc.,* 339 F.3d 376, 381 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities.").

rights violation under Section 1983. *White v. Taylor,* 959 F.2d 539, 544 (5th Cir. 1992). Such immunity protects public officials from suit unless their conduct violates a clearly established constitutional right. *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003). The defendant must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Bazan v. Hidalgo Cnty,* 246 F.3d 481, 489 (5th Cir. 2001). Ultimately, where a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villarreal,* 628 F. 3d 209, 211 (5th Cir. 2010). The common path of qualified immunity is a two-step analysis where the court first determines whether the defendant has violated an actual constitutional right, See *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002), and if the answer is "no," the analysis ends. *Freeman v. Gore,* 483 F.3d 404, 410-11 (5th Cir. 2007). If the answer is "yes," then the court considers whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* at 411.

In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. *Elder v. Holloway,* 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015); *Malley v. Briggs,* 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir. 1992).

*ENGUIS* - Unlike Title VII, a claimed violation under the equal protection clause of the 14TH Amendment may be brought under §1983 against Mr. Fair as an individual. While a plaintiff may not use Section 1983 to enforce rights secured by Title VII of the 1964 Civil Rights Act, it does not follow that conduct violative of both Title VII and the U.S. Constitution cannot both be pursued.

*Newcomb v. Starkville Sch. Dist.,* 1998 U.S. App. LEXIS 40160, at *1-2 (5th Cir. Apr. 9, 1998). Historically, the black letter law statement was that sex discrimination and "Sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment." *Southard v. Tex. Bd. of Crim. Justice,* 114 F.3d 539, 550 (5th Cir. 1997). If we take for granted that they do, the analysis is largely the same as the failed theories under Title VII. *Id.* at 554.

Fundamentally, "to state a claim under the Equal Protection Clause, a Section 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Sir Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999). Yet, Rice has not alleged any type of "class-based" discrimination. That is, Rice never once even mentions her protected class or attempts to reconcile her female supervisor's agreement with termination. Thus, Rice is actually alleging sexual harassment as a "class-of-one" equal protection claim. However, such class-of-one equal protection claims are not cognizable in the public employment context. *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 608-09, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).[5]

**B. ANALYSIS**

**FACT: RICE HAS NOT ALLEGED CLASS BASED DISCRIMINATION.**

Summarized, Rice's Title VII Claim fails as outlined in preceding arguments - claims are

---

[5]In *Engquist,* the Supreme Court noted that "[t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." 553 U.S. at 603. "In such cases the rule that people should be treated alike, under like circumstances and conditions is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.* (internal quotation marks omitted). The Court went on to say that this principle applied "clearly in the employment context," and therefore held that "the class-of-one theory of equal protection . . . is simply a poor fit in the public employment context." *Id.* at 604-05. The Court concluded that "the class-of-one theory of equal protection has no application in the public employment context." *Id.* at 607.

not objectively severe enough for a hostile environment - no quid pro quo or cats paw theories are plead - a causation failure arises from the actions of the intermediate supervisor sufficient for summary judgment - and - Mr. Fair is an improper individual defendant and redundant official defendant. Certainly, applying *Southard* as the black letter law - the §1983 claim must fail too.

However, a compelling alternate basis for qualified immunity and summary judgment exists if Rice's actual theory here is measured against *Engquist*. Having neither direct discrimination claims nor any basis to taint the intermediate female supervisor at work who cited her for insubordination and concurred with her discharge, *Rice* is seeking an inference of disputed fact which can only come from a comparison to differential treatment. Yet, she alleges none. In short, ***Rice's §1983 claim is a prohibited equal protection class of one claim***. Because Plaintiff Rice has failed to demonstrate a claim under the Equal Protection Clause, the Court need not address the second prong (objective reasonableness) of the Section 1983 qualified-immunity analysis.

Should the Court address the objective reasonableness prong of qualified immunity, just as compelling an avenue to summary judgment arises when the distinct difference between Title VII and §1983 play out against the findings of the intermediate female supervisor. Considering Mr. Fair, as a §1983 individual defendant only, a mixed-motive theory may theoretically arise from the express legislative intent of Title VII,[6] but not from §1983. Put differently, Rice does not have a sustainable pretext claim or a legal basis for asserting a mixed motive as to her Sexual Harassment -

---

[6] See *Landgraf v. Usi Film Prods.,* 511 U.S. 244, 251, 114 S. Ct. 1483, 1489-90 (1994) (Explaining how the amendment to § 107 the Civil Rights Act of 1991 (PL 102-166)(codified at 42 USCS 1981a) was a response by Congress to *Price Waterhouse v. Hopkins*, setting standards applicable in "mixed motive" cases.

Sexually Hostile Environment Claim. Likewise, Retaliation under Title VII does not allow for mixed motive. *University of Tex. SW. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2533 (2013). Given that the female intermediate supervisor found insubordination and agreed with termination on those facts alone, Plaintiff Rice cannot carry her burden of defeating qualified immunity - that any official would objectively believe her termination unlawful.

Respectfully, qualified immunity and summary judgment are proper here for the individual claims of Plaintiff Rice.

**RESPECTFULLY SUBMITTED** this the 24th day of January, 2019.

**JACKS | GRIFFITH | LUCIANO, P.A.**

By: /s/ ***Daniel J. Griffith***
Daniel J. Griffith, MS Bar No. 8366
Mary McKay Griffith, MS Bar No. 100785
Attorneys for Defendant Hinds County Tax Collector, Eddie J. Fair, Individually

Of Counsel:

**JACKS| GRIFFITH| LUCIANO, P.A.**
150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone No. 662-843-6171
FAX No. 662-843-6176
Email: dgriffith@jlpalaw.com
mgriffith@jlpalaw.com

**CERTIFICATE OF SERVICE**

I, Daniel J. Griffith, attorney of record for Defendant Hinds County Tax Collector, Eddie J. Fair, Individually, do hereby certify that I have this day caused a true and correct copy of the above and foregoing *Memorandum In Support of Summary Judgment* to be delivered by the ECF Filing System which gave notice to the following:

Louis H. Watson, Jr., Esq.
Nick Norris, Esq.
WATSON & NORRIS, PLLC
1880 Lakeland Dr., Ste. G
Jackson, MS 39216-4972
Phone: (601) 968-0000
Fax: (601) 968-0010
Email: louis@watsonnorris.com
nick@watsonnorris.com
**Attorneys for Plaintiff**

William R. Allen
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P.O. Box 751
Brookhaven, MS 39602
Phone: 601-833-4361
Fax: 601-833-6647
Email: wallen@aabalegal.com
**Attorney for Hinds County, Mississippi; Hinds County Sheriff's Office; and Victor Mason**

**DATED** this 24th day of January, 2019.

/s/ ***Daniel J. Griffith***
Daniel J. Griffith