UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BERNITHA RICE                                                                               PLAINTIFF

V.                                                              CIVIL ACTION NO. 3:17-CV-932-DPJ-FKB

EDDIE J. FAIR, HINDS COUNTY TAX
COLLECTOR, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITIES                                                                      DEFENDANT

ORDER

This employment dispute is before the Court on three motions: (1) Plaintiff Bernitha Rice's motion for partial summary judgment [51]; (2) a motion for summary judgment [53] filed by Defendant Eddie Fair, in his individual capacity; and (3) a motion for summary judgment [55] filed by Hinds County on behalf of Defendant Eddie Fair in his official capacity. For the following reasons, all motions are denied.

I.     Factual Background

Plaintiff Bernitha Rice worked as a teller in the Hinds County Tax Collector's Office for roughly three months. She claims Eddie Fair, the elected Hinds County Tax Collector, sexually harassed her throughout her brief three months of employment.

Rice says Fair verbally harassed her, making comments "about how her lips looked and saying he wanted to kiss her lips." Compl. [1] at 2; *see also* Rice Aff. [73-1] at 1; Rice Dep. [55-1] at 6. He also allegedly remarked "how he loved the way [she] walked and how her rear fit into her pants," suggesting she "was going to find herself in some trouble." Compl. [1] at 2; *see also* Rice Aff. [73-1] at 1; Rice Dep. [55-1] at 6. Rice says comments like these occurred two to three times a day during her tenure working for Fair. *See* Rice Aff. [73-1] ¶ 3. She also alleges

physical harassment, describing an incident where Fair rubbed his genitals on her "back right on the rear part of [her] butt." Rice Dep. [55-1] at 6.

Rice says the harassment continued outside the office. First, she asserts that Fair repeatedly called and texted her in the evenings. *Id.*; *id.* at 9. Second, at an event attended by several office employees, Rice felt uncomfortable when Fair repeatedly complimented her clothing and said "he'd really like to get under [her] skirt." *Id.* at 18. Finally, Fair purportedly invited Rice to his home several times and suggested they travel to New Orleans, Memphis, Atlanta, and the Mississippi Delta together. *Id.* at 6.

For his part, Fair denies Rice's factual allegations and insists that her work performance was substandard, citing rude behavior and an inability to handle transactions properly. Fair Aff. [55-5] at 2. On July 7, 2016—less than three months after her arrival—Fair terminated Rice's employment for alleged insubordination. Fair Letter [55-8]. Aggrieved by her termination, Rice filed a charge of discrimination with the Equal Employment Opportunity Commission. After receiving notice of her right to sue, Rice filed this action against Fair, in his individual capacity, and Hinds County. Compl. [1].

In her Complaint, Rice advanced claims of sexual harassment and retaliation, invoking Title VII and the Equal Protection Clause. She has since conceded her Title VII and retaliation claims. As mentioned, all parties have filed motions for summary judgment. Fair and Hinds County both seek dismissal of all claims; Rice asks for partial summary judgment on Defendants' affirmative defense of failure to mitigate damages. Both Defendants declined to file replies in support of their motions, and the time to do so has passed.[1]

---

[1] Fair, in his official capacity, was later substituted for Hinds County. Feb. 27, 2019 Text-Only Order (granting unopposed motion to substitute). For brevity, the Court will refer to Defendants

II.     Summary-Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

---

as "Hinds County" (meaning Fair in his official capacity) and "Fair" (meaning Fair in his individual capacity).

III.   Analysis

   A.   Defendants' Motions

Rice alleges that Fair sexually harassed her at work and ultimately fired her because she resisted his advances, all in violation of the Equal Protection Clause. *See Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment."). Sexual-harassment claims under 42 U.S.C. § 1983 follow the same standards as claims under Title VII. *See Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (noting that § 1983 and Title VII are "parallel causes of action" (citation omitted)).

Sexual-harassment claims involving supervisors can take two forms—a hostile-work-environment claim or a quid pro quo claim. *Casiano v. AT&T Corp.*, 213 F.3d 278, 283–84 (5th Cir. 2000). The Fifth Circuit explained the distinction in *Casiano*, providing a roadmap for the analysis. The first question is whether the plaintiff suffered a tangible employment action. *Id.* at 283. If so, the "suit is classified as a 'quid pro quo' case; if [she] has not, [her] suit is classified as a 'hostile environment' case." *Id.* Under the quid pro quo theory, "the court must determine whether the tangible employment action suffered by the employee resulted from [her] acceptance or rejection of [her] supervisor's alleged sexual harassment." *Id.* If so, then the employer is vicariously liable. *Id.*

If, however, there has been no tangible employment decision, the case is one for hostile work environment. *Id.* at 284. And in such cases, the plaintiff must show that the conduct was "severe or pervasive." *Id.* If she does, then the employer is again liable unless it can establish the so called *Ellerth/Faragher* defense. *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775

(1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). That defense requires proof that "(1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

In the present case, Rice pursues and has adequately pleaded both theories. And it is possible that both theories could reach a jury. For example, a jury could find that a plaintiff suffered under a hostile work environment but failed to prove she lost her job because she rejected alleged advances. *See Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002) (rejecting *Ellerth/Faragher* defense in case that was tried under hostile-work-environment theory but where plaintiff proved tangible employment action), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 66 (2006).

Defendants first attack both claims by asserting that Rice has "no substantiated proof of Fair's actions." Hinds Cty. Mem. [56] at 12; *see id.* at 18 ("Plaintiff has failed to sufficiently prove incidences of harassment or sexual advances."). To support that argument Defendants list Rice's factual assertions and then provide their own countervailing evidence to discredit her deposition testimony and affidavit.

But under Rule 56, this Court must view the record in the light most favorable to Rice. *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). Significantly, it may "not make credibility determinations or weigh the evidence." *Reeves*, 539 U.S. at 150. To do so is reversible error. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (reversing summary judgment where court made credibility determination). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that district court should have rejected plaintiff's testimony because it conflicted with videotape surveillance footage). The Court is not willing to say that Rice's testimony is "blatantly contradicted by the record." *Id.*

Next, as to the hostile-work-environment claim, Defendants argue that the alleged harassing conduct was not severe or pervasive. Hinds Cty. Mem. [56] at 16; Fair Mem. [54] at 6. But Rice testified that Fair called and texted her numerous times after hours to ask her out; made suggestive and sexual comments two to three times a day; and once rubbed his genitalia against her. And because all this happened during the brief three months she worked for him, there is a jury question whether the conduct was sufficiently severe or pervasive. *See Lauderdale*, 512 F.3d at 166–67 (finding "the frequency of unwanted attention, over a four-month time period, amounts to pervasive harassment" and "[g]iven this pervasiveness, the level of severity necessary to establish an altered work environment is diminished").

Hinds County also says that because Rice did not inform anyone of the harassment, her employer could not have known about it. Hinds Cty. Mem. [56] at 17 (arguing Rice is "unable to meet the fifth prong"). This argument would not impact the quid pro quo claim. *See Casiano*, 213 F.3d at 284. And as to the hostile-work-environment claim, Rice points out that Fair was the elected Hinds County Tax Collector. So arguably he was the office's "proxy such that his actions are imputable to [the employer] and the *Faragher/Ellerth* affirmative defense is unavailable." *Ackel v. Nat'l Commc'ns., Inc.*, 339 F.3d 376, 284 (5th Cir. 2003); *see id.* at 393 (noting that an owner, a supervisor holding a high position in management, a partner, or a corporate officer may be treated as "a corporation's proxy"). Neither Defendant replied to Rice's proxy argument, so the Court will accept it for now.

Finally, Defendants seek summary judgment as to the quid pro quo claim, suggesting Rice cannot show her firing resulted from her "rejection of [Fair's] alleged sexual harassment" instead of her poor job performance. Hinds Cty. Mem. [56] at 18 (quoting *White v. Rouses Enters.*, LLC, No. CV 15-1384, 2016 WL 3127232, at *7 (E.D. La. June 3, 2016)); *see also* Fair Mem. [54] at 8 (arguing Rice cannot show the alleged harassment proximately caused her termination). But again, Defendants invite the Court to accept their word over Rice's. Rice testified that Fair harassed her, she rejected his advances, and he terminated her employment— all within three months. She also denies the performance issues Fair contends led to her termination. Accordingly, questions of fact preclude summary judgment.[2]

In sum, this action presents a classic he said/she said case. Summary judgment is inappropriate; Defendants' motions are denied.

B.  Plaintiff's Motion

Rice seeks summary judgment on Defendants' failure-to-mitigate affirmative defense. Hinds Cty. Answer [3] at 8; Fair Answer [6] at 3. To establish that affirmative defense, "a defendant must show that substantially equivalent work was available and that the plaintiff did not exercise reasonable diligence to obtain it." *Storr v. Alcorn State Univ.*, No. 3:15-CV-618-DPJ-FKB, 2017 WL 3471191, at *4 (S.D. Miss. Aug. 11, 2017) (citing *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990)). Rice says Defendants omitted a factual basis for the defense in their Answers and failed to produce evidence supporting the defense during discovery. Pl.'s Mem. [52] at 3.

---

[2] The Court also finds Fair is not entitled to summary judgment based on qualified immunity. *See Lauderdale*, 512 F.3d at 166–67 ("Because we have already determined that [the supervisor's] alleged behavior is actionable under [T]itle VII and § 1983, we have necessarily determined that such behavior was objectively offensive and, therefore, not objectively reasonable. Thus, he is not entitled to qualified immunity.").

Hinds County counters that Rice's own deposition testimony establishes that substantially equivalent work was available. Rice Dep. [55-1] at 9–11. Rice was gainfully employed by Marriott immediately after her termination from employment but quit because the job "aggravated" her post-traumatic-stress disorder. *Id.*; *but see* Pl.'s Reply [75] at 1 (arguing that Rice's employment as a hotel cook was not "substantially equivalent" to her work as a teller with Hinds County).

Hinds County and Fair alternatively argue that Rice's motion—and more specifically her claims for back and front pay—are moot because she now collects 100% disability from the Veterans Administration. Hinds County reasons that because she is 100% disabled, she is unable to hold a job and is not entitled to back or front pay. On this point, Rice acknowledges her disability but says Fair's harassment caused it. Pl.'s Reply [75] at 3.

The Court concludes that Defendants adequately pleaded their failure-to-mitigate affirmative defense under notice pleading standards. Moreover, questions of fact exist. The Court therefore denies the motion.

IV. Conclusion

The Court has considered all the arguments raised; those not addressed would not have changed the outcome. For the reasons stated, Defendants' motions for summary judgment [53, 55] and Plaintiff's motion for partial summary judgment [51] are all denied.

**SO ORDERED AND ADJUDGED** this the 29th day of April, 2019.

s/ *Daniel P. Jordan III*<br>CHIEF UNITED STATES DISTRICT JUDGE