**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BERNITHA RICE** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 3:17-CV-00932-DPJ-FKB**

**HINDS COUNTY, MISSISSIPPI a/k/a**
**HINDS COUNTY BOARD OF SUPERVISORS and**
**HINDS COUNTY TAX COLLECTOR, EDDIE J. FAIR**
**INDIVIDUALLY** **DEFENDANTS**

# <u>BRIEF IN SUPPORT OF MOTION *IN LIMINE* NO. 1</u>

[Exclude VA Records]

**COMES NOW** Defendant Eddie Fair, by and through counsel, and respectfully submits his separate brief as required by Local Rule 7.2(D) in support to their Motion *in limine* to instruct, direct, and order Plaintiff's Counsel, Plaintiff, and all other witnesses not to testify concerning, mention, refer to, question regarding, present evidence of, or offer any argument concerning her records from the Veterans Administration because Plaintiff Rice has designated no experts, only produced the final finding after discovery and disclosed no sponsoring witness other than herself, to wit:

## I.

## BACKGROUND

By Memorandum Opinion appearing herein at **[Doc. #80]**, Plaintiff's Claim pursuant to 42 U.S.C. §1983 is for sexual harassment via either hostile environment with the issue being whether the conduct by Defendant Fair, if any, was sufficiently severe and pervasive enough to constitute sexual harassment AND/OR for quid pro quo sexual harassment with the issue being whether the alleged employment performance denied by Plaintiff Rice actually occurred and was the cause of

her termination rather than any conduct by Defendant Fair.

The issue of disability here is critical to claimed damages. Rice carries full service connected vocational disability from the VA. As noted by the Court's Opinion, Rice does not dispute this, "but says Fair's harassment caused it". [**Doc. #80**, Page 8]. The Court denied Rice's motion for a partial summary judgment on mitigation of evidence.

## II. DEVELOPMENT

On April 11, 2016, Plaintiff was hired at the Hinds County Tax Collector's Office as teller. Plaintiff's cubicle was station nine (9) and intermittently during her tenure at the Tax Collector's Office she was stationed next to various co-workers including Kiki, Latoya, and Joseph Francis.

Plaintiff contends that Defendant Fair would stand behind her while she was in her cubicle and talk about her rear end or lips. Plaintiff does not know if Kiki or Latoya, located in close proximity to her, heard what Fair said, yet, Plaintiff states that she knows Joseph heard a customer comment on her lips and Fair rebuked the customer by saying "[S]ir, don't say that." Joseph Francis denied he ever heard of or saw any of the aforementioned conduct by Fair.

During the first two (2) weeks of Plaintiff's employment, she states that Fair invited her to the Lynch Street Festival, an indoor concert, where there was a table for all Tax Collector's Office employees. Plaintiff brought her son's now-fiancé, Jasmine Gunn, with her to the Festival. She contends that, at the Festival, Fair leaned over Gunn to speak with Plaintiff, and complimented "her clothes," telling her he would "like to get under [her] skirt," and asked how the alcohol made her "feel." Plaintiff alleges that no one heard these comments because it was loud; however, Gunn claims that the music "wasn't really loud" and a conversation could be held a few feet apart. In fact, Gunn makes no mention of this incident between Plaintiff and Fair nor of the alleged comments Fair

told Plaintiff.

In the brief three (3)-month period that Plaintiff worked at the Tax Collector's Office, Plaintiff contends that Fair would call her cell phone in the evenings and talk about taking her out to places such as New Orleans or the Delta. Plaintiff allegedly would conference her sister in on these calls with Fair or text her sister during these calls. If Plaintiff did not answer the phone, Fair would allegedly say "I called you last night. You didn't answer." Plaintiff states that her telephone number at the time, the number Fair used to call her on, was (601) 715-0601.

According to Plaintiff's phone records that were produced, the parties only shared eleven (11) calls between them with more than half the phone calls lasting less than five (5) minutes. More specifically, according to telephone records, calls between the phone numbers occurred on: (1) April 12, 2016, lasting two (2) minutes; (3) April 3, 2016, lasting three (3) minutes; (4) April 15, 2016, lasting fourteen (14) minutes; (5) April 16, 2016, lasting four (4) minutes; (6) April 22, 2016, lasting twelve (12) minutes; (7) April 25, 2016, lasting approximately thirteen (13) minutes; (8) April 25, 2016, lasting one (1) minute; (9) April 25, 2016, lasting one (1) minute; (10) April 26, 2016, lasting four (4) minutes; (11) May 2, 2016, lasting one (1) minute. *Id*.

Plaintiff indicates that a "C" should appear next to the call if it was a conference call. Despite Plaintiff's contentions that she would routinely conference call-in her sister, Leta Bryant, on the calls with Fair, phone records indicate only one (1) phone call, on April 15, 2016, with Fair's number was a conference call.

Plaintiff's telephone records also indicate a series of text messages were exchanged between the parties from April 22, 2016, through May 9, 2016, though Plaintiff notes that the majority of the "talking" was "on the phone." Plaintiff states that on June 4, 2016, Fair text her asking Plaintiff what

she wanted for her birthday and told her he would get Plaintiff a Louis Vuitton purse if she was his "woman." Plaintiff has not provided any documentation to prove this text occurred on June 4, 2016. It should be noted, during Plaintiff's employment, Eddie Fair employed a policy where employees would call or text him regarding days off at work. Fair adamantly denies he ever had an inappropriate conversation with Plaintiff or any other employee.

Additionally, Plaintiff alleges that Fair would ask her back to his office, during her breaks to use the restroom, to ask Plaintiff to: come to Fair's home, what did Plaintiff like to drink, and what did Plaintiff do on her time off. However, Plaintiff later states that she and Fair were only ever alone in Fair's office three (3) times, specifically: (1) when Plaintiff was hired; (2) when Plaintiff came from the bathroom one day; and (3) when Plaintiff reported her supervisor, Kristi for saying Plaintiff would be "out the door" if she could not learn the job quickly. Plaintiff notes that the door to Fair's office was always open, and Fair had a secretary that sat outside his office, although Plaintiff can only recall seeing the secretary on one occasion. Mr. Fair adamantly denies any of these allegations occurred.

On another occasion during Plaintiff's employment, she went to the customer service desk during her break to talk to her friend Patricia Collins. Plaintiff alleges Fair walked behind her and his "private part" rubbed against Plaintiff's "right buttock." Plaintiff contends that Patricia saw this incident and questioned her about it, however Plaintiff denied Fair touched her. Patricia Collins denies she ever saw the aforementioned conduct or any sexual conduct by Fair towards Plaintiff. Despite these events, Plaintiff never reported them to anyone in the office including her closest friend, Patricia, at customer service, other co-workers, her immediate supervisor, Kristi, the office manager, or anyone at the Board of Supervisors office. Again, Mr. Fair adamantly denies the

aforementioned events occurred, and he maintained a strict code of professionalism between himself and the Plaintiff.

Plaintiff believes that she "caught on" to her job quickly, despite stating she needed to ask the supervisors to help with transactions countless times. Ultimately, on July 7, 2016, Plaintiff was asked to see Fair in his office, and she was handed a termination letter, which stated Plaintiff's termination was due to "insubordination." More specifically, the letter stated that there were several conversations concerning Plaintiff's "unprofessional behaviors, including loudness, rudeness, etc." [**Doc. 55-8**, Termination Letter]. Plaintiff's co-workers have described Plaintiff's behavior at the Tax Collector's Office as "unprofessional" and consistently complained about Plaintiff's behavior. Joseph stated Plaintiff would sing at her desk, make inappropriate statements, act rudely towards customers and supervisors, and make comments about them under her breath. Additionally, Plaintiff was unable to perform the work the job required including making multiple errors. When Plaintiff was corrected, she became argumentative.

While Plaintiff denies she was insubordinate, she admits that at one point her supervisor, Kristi, asked her if she was singing, which Plaintiff denied at the time. Additionally, Plaintiff admits that a customer once stated that she was "too loud in her ear." Finally, Plaintiff admits that she was late to work on the Tuesday of the week she was terminated. Per the handbook, Plaintiff was sent home without pay.

During her tenure at the Tax Collector's Office, Plaintiff would see her therapist. Plaintiff contends that she told her therapist about the sexual harassment during the time period she was working in the Tax Collector’s Office, despite her medical records indicating that she had not spoken with the therapist about harassment until after she was terminated. Additionally, she

conveyed to her doctor on July 25, 2016, a mere two (2) weeks after her termination, that she was let go at the Tax Collector's Office due to "budget cuts" and since she was "one of the last ones [employees] hired." Plaintiff contends this statement is inaccurate.

Finally, Plaintiff acknowledges that she was diagnosed with PTSD and a narcissistic personality disorder by Doctor Pilgrim at the VA clinic in 2014 while attending the Wiser Program. This program was intended as a group therapy program for veterans with PTSD; however, Plaintiff was kicked out of the program for her inability to get along with others. Effective in October of 2018, Plaintiff was given 100% service connected occupational disability. No provider, medical or otherwise, has been designated to connect this to her termination from Hinds County.

## III.
## DISCLOSURES

The Complaint in this matter was filed on November 21, 2018 [Doc. 1]. Thereafter, an Answer was filed by this Defendant on January 19, 2018 **[Doc. 6]**. Thereafter, a Case Management Order was entered by the Court on February 6, 2018, setting out deadlines in this matter. Within said Order, the discovery deadline was September 20, 2018 **[Doc. 10]**. In April and May of 2018, Plaintiff served subpoenas on T-Mobile and Cspire in order to get records of Plaintiff's own phone records. **[Docs. 33 and 34]**.

Via her initial core, Plaintiff listed the parties, her sister and Jasmin Gunn by name. She listed her personnel file, pay records and EEOC file as documents. According to her disclosure regarding damages, she lists back wages of $42,400.00, future wages of $85,800.00, and unspecified compensatory damages of $300,000.00. During discovery, Plaintiff produced the above documents and a portion of her phone records, verified past employment, admitted a prior service-connected 70% disability rating. After discovery, she supplemented this to be currently a service-connected

100% disability rating. It is undisputed that Plaintiff now carries a service-connected “entitlement to individual unemployability effective October 2, 2018". Plaintiff took no depositions. Plaintiff designated no experts.

**IV.**
**ADMISSIBILITY**

Respectfully, the records from the Veterans Administration should not be admitted here because Plaintiff Rice has designated no experts and only produced the final finding after discovery and has disclosed no sponsoring witness for the same.

**ISSUE:** In anticipation that Plaintiff may attempt to list VA records as an exhibit for trial even though there has been no treating physician or expert designation made here.

Plaintiff’s admitted service-connected vocational disability is not disputed. Were it disputed, the probative value of the same would clearly outweigh any prejudice to her claims of back pay.[1] These are simply facts known and admitted by Ms. Rice for which is not necessary to add a batch of medical records to jury. Without a sponsor, they are clearly uncertified and not subject to authentication. They are clearly full of hearsay. Their meaning to a lay person without an expert is likely confusing, at best. Accordingly, the best evidentiary path is to exclude the actual records.[2]

---

[1]*Jones v. City of Warren,* 2015 U.S. Dist. LEXIS 83430, at *7 (E.D. Mich. June 26, 2015).

[2]See *McConnell v. Hirschbach Motor Lines, Inc,* 2013 U.S. Dist. LEXIS 148387 (M.D. La. Oct. 15, 2013) (finding evidence of plaintiff's right elbow and right great toe injuries irrelevant to evaluating his left sided injuries caused in the subject accident but finding that his medical and impairment history was probative of the nature and extent of his claimed damages and therefore relevant to plaintiff's claim for past and future loss of wages and earning capacity, but deferring a ruling to trial).

This approach is equally fair to all parties.[3]

**NOW THEREFORE,** the Defendant respectfully prays that the Court rule *in limine* that the Plaintiff is precluded from offering her VA Records as an exhibit at trial or attempting to testify from them at trial.

**RESPECTFULLY SUBMITTED** this the 12th day of June, 2019.

**EDDIE FAIR, DEFENDANT**

By: /s/ ***Daniel J. Griffith***
Daniel J. Griffith, MS Bar No. 8366
Mary McKay Griffith, MS Bar No. 100785
Attorneys for Defendant

Of Counsel:

**JACKS| GRIFFITH| LUCIANO, P.A.**
150 North Sharpe Street
P. O. Box 1209
Cleveland, MS 38732
Phone: 662-843-6171
Fax: 662-843-6176
Email: dgriffith@jlpalaw.com
mgriffith@jlpalaw.com
www.jlpalaw.com

[3] *Ernestine v. Hi-Vac LLC*, 2016 U.S. Dist. LEXIS 141290, at *5 (S.D. Miss. Oct. 12, 2016)(Defendant will be allowed to use Plaintiff's past medical history on cross-examination for impeachment purposes. However, they will not be allowed to introduce extrinsic evidence of this history into the record.).

## CERTIFICATE OF SERVICE

I, Daniel J. Griffith, attorney for Defendant, Hinds County Tax Collector, Eddie Fair, hereby certifies that on this day, I electronically filed the foregoing ***Brief in Support of Motion in Limine #1*** with the Clerk of the Court using the ECF system which gave notification of such filing to all Counsel of Record:

Louis H. Watson, Jr., Esq.
Nick Norris, Esq.
WATSON & NORRIS, PLLC
1880 Lakeland Dr., Ste. G
Jackson, MS 39216-4972
Phone: (601) 968-0000
Fax: (601) 968-0010
Email: louis@watsonnorris.com
nick@watsonnorris.com
**Attorneys for Plaintiff**

William R. Allen, Esq.
Katelyn A. Riley, Esq.
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P.O. Box 751
Brookhaven, MS 39602
Phone: 601-833-4361
Fax: 601-833-6647
Email: wallen@aabalegal.com
kriley@aabalegal.com
**Attorneys for Hinds County, Mississippi**

This the 12th day of June, 2019.

By: /s/ ***Daniel J. Griffith***
Daniel J. Griffith